**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 4 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 04-8054

JONA R. PAYTON,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 03-CR-99-D)**

Submitted on the briefs.[*]

Robert G. Levitt, Denver, Colorado and Timothy C. Kingston, Graves, Miller & Kingston, P.C., Cheyenne, Wyoming, for Defendant-Appellant.

Matthew H. Mead, United States Attorney, District of Wyoming; Darrell L. Fun, Assistant United States Attorney, District of Wyoming; and David A. Kubichek, Assistant United States Attorney, District of Wyoming, for Plaintiff-Appellee.

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

**McCONNELL**, Circuit Judge.

———————————

Jona R. Payton pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846. The district court sentenced her to 120 months imprisonment. Ms. Payton now appeals the district court's sentence, arguing that (1) her sentence should not have been enhanced because she did not possess a firearm within the meaning of U.S.S.G. § 2D1.1(b)(1), (2) she was entitled to the application of the "safety valve" provision of U.S.S.G. § 5C1.2(a)(2), and (3) she is entitled to a remand for resentencing pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRM** the judgment of the district court.

## I.

In February 2003, Ms. Payton was arrested shortly after selling four ounces of methamphetamine for $5,100. Ms. Payton gave investigators consent to search her residence. During the course of the search, the officers found three firearms secreted in a hidden compartment under her bathtub, a shotgun under her bed, and a revolver under a chair in her living room. In addition to the firearms, the officers found substantial quantities of methamphetamine stored throughout her apartment. The grand jury indicted Ms. Payton and Jose Alvarez as co-defendants

on six drug-related counts. Ms. Payton pleaded guilty to a charge of conspiracy to possess with intent to distribute methamphetamine.

At the sentencing hearing, the district court determined that Ms. Payton should receive a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing firearms, and that she was ineligible for a safety valve sentence under U.S.S.G. § 5C1.2(a)(2) because she possessed firearms in connection with her drug trafficking offense. The district court accordingly sentenced her to 120 months imprisonment, the statutory minimum applicable to her conviction.

## II.

### A.

We begin with Ms. Payton's factual challenge to the district court's determination of her sentence. Ms. Payton challenges her sentence enhancement under § 2D1.1(b)(1) for use of a firearm in connection with the drug conspiracy and the district court's refusal to apply the § 5C1.2(a) safety valve provision because she possessed a firearm. The district court correctly declined to apply the safety valve provision; therefore, the "enhancement" under § 2D1.1(b)(1) is not a live controversy.

The § 5C1.2 safety valve provision specifies five criteria that a defendant must satisfy to qualify for an exception to an otherwise mandatory minimum sentence:

(1) the defendant does not have more than [one] criminal history point . . .;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . ."; and

(5) the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense . . .

The burden is on the defendant to demonstrate that she meets all five criteria. *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1129 (10th Cir. 2003). The district court concluded that Ms. Payton's personal possession of firearms in connection with the conspiracy precluded her from carrying her burden of meeting the second criterion. Before *Booker*, we reviewed a district court's analysis under § 5C1.2 for clear error. *Id.* at 1129 (10th Cir. 2003). Because *Booker* does not speak to this type of fact-finding,[1] we will continue to do so. *See Rojas-Coria*, 401 F.3d at 873 (reviewing a refusal to apply the safety valve provision for clear error after *Booker*).

On appeal, Ms. Payton argues that she was only keeping the firearms for her co-defendant, Jose Alvarez, and "never physically possessed or used" them.

---

[1]See page 10, below.

Aplt. Br. 12. Her only support for this argument is her testimony to that effect at the sentencing hearing. This showing is insufficient for at least two reasons. First, the assessment of Ms. Payton's credibility is a matter for the district court. Our review of a district court's determination of a witness's credibility at sentencing is extremely deferential. *See Virgen-Chavarin*, 350 F.3d at 1134 (stating that a district court's determination of witness credibility at sentencing is "virtually unreviewable on appeal"). At several points during the sentencing hearing the district court expressed immediate skepticism concerning Ms. Payton's testimony. When Ms. Payton attempted to explain the presence of a 12-gauge shotgun in her apartment, which she admitted purchasing, by saying that it was a Valentine's Day gift for her co-defendant, the district court asked whether she was aware "how implausible all this sounds." Rec. Vol. 3 at 31. On cross-examination, when Ms. Payton denied a drug-related motive for her delivery of a 9 millimeter handgun to some associates of the co-defendant in Colorado, the district court asked, "What did you think you were doing? . . . [D]id you think they were . . . the local members of the NRA chapter?" *Id.* at 69. The district court simply did not believe Ms. Payton's attempts to disclaim possession of the guns found in her house. By merely rehashing her testimony, which was not found to be credible, Ms. Payton is asking us for a de novo determination of

credibility. This is not our role. She provides no reason to disturb the district court's assessment that her testimony was not believable.

Second, there are uncontested facts strongly suggesting that, as a matter of law, Ms. Payton actually possessed firearms in connection with the conspiracy to distribute methamphetamine. When law enforcement officers searched Ms. Payton's apartment they found five firearms stored in close proximity to substantial amounts of methamphetamine. One of the weapons was a short-barreled 12-gauge shotgun that Ms. Payton admitted purchasing for her co-defendant. Her purchase of the gun is sufficient to show actual possession. *See United States v. Lindsey*, 389 F.3d 1334, 1338–39 (10th Cir. 2004). In addition, she admitted she delivered a handgun to associates of her co-defendant, thus she actually possessed a firearm while carrying out this task. There are strong indications that her actual possession of these guns was connected to the conspiracy. The shotgun was hidden under her bed in close proximity to two 8-balls of methamphetamine in her dresser.[2] The mere propinquity of the weapons and drugs suggests a connection between the two. *Cf. United States v. Browning*,

---

[2] The other guns and drugs were also concealed throughout her residence. The police found three-quarters of a pound of methamphetamine and a .44 magnum revolver hidden in a chair in the living room, three guns stored in a secret compartment under the bathtub, and another 8-ball of methamphetamine and a pyrex dish containing methamphetamine in the kitchen. "8-ball" refers to an eighth of an ounce. *See, e.g.*, *United States v. Quintana*, 70 F.3d 1167, 1171 (10th Cir. 1995).

252 F.3d 1153, 1160 (10th Cir. 2001) (explaining that "proximity" of a weapon

and narcotics can demonstrate the connection necessary to support an

enhancement under U.S.S.G. § 2K2.1(b)(5) for use or possession of a firearm "in

connection with another felony offense").  Moreover, the lethality of the short-

barreled shotgun supports the inference that this weapon had an illicit purpose.

*See United States v. Wyatt*, 102 F.3d 241, 248 (7th Cir. 1996) (noting that short-

barreled guns are often associated with the narcotics trade).  Finally, the co-

defendant's practice of trading firearms for methamphetamine supports an

inference that Ms. Payton's delivery of a handgun to two men, at her co-

defendant's direction,[3] was connected to the conspiracy.  Accordingly, we cannot

say that the district court clearly erred in concluding that Ms. Payton was not

eligible for the safety valve because she personally possessed firearms.

Our conclusion that the district court properly refused to apply the safety

valve provision obviates the need to consider Ms. Payton's challenge to the

sentence enhancement under § 2D1.1(b)(1).  Because she was not eligible for the

safety valve, Ms. Payton received the mandatory minimum sentence required by

---

[3] Ms. Payton admitted being present on another occasion when her co-defendant traded methamphetamine for a firearm.  Rec. Vol. 3 at 63.  The Supreme Court has held that "a criminal who trades firearms for drugs 'uses' it during and in relation to the drug trafficking offense within the meaning of" 18 U.S.C. § 924(c)(1), which prescribes a range of mandatory minimum sentences for use of a firearm in connection with violent crimes and drug trafficking offenses.  *Smith v. United States*, 508 U.S. 223, 241 (1993).

statute. The two-level enhancement Ms. Payton received pursuant to §

2D1.1(b)(1) therefore had no material effect on her term of incarceration.

Consequently, the issue is moot and we need not address it. *See United States v.*

*Williams*, 216 F.3d 611, 615 (7th Cir. 2000) (concluding that an appeal of a §

2D1.1(b)(1) enhancement was moot because the defendant received the mandatory

minimum sentence).

**B.**

Ms. Payton filed a supplemental brief arguing that, under *United States v.*

*Booker*, 125 S.Ct. 738 (2005), the methodology used to determine her sentence

violated her Sixth Amendment rights. She did not raise this argument, or any

other Sixth Amendment argument, during her sentencing. Accordingly, we

review for plain error. *See* Fed. R. Crim. P. 52(b); *Booker*, 125 S. Ct. at 769

("[W]e expect reviewing courts to . . . determin[e] . . . whether the issue was

raised below and whether it fails the 'plain error' test."); *United States v.*

*Gonzalez-Huerta*, ___ F.3d ___, 2005 WL 807008 *3 (10th Cir. 2005) (en banc).

To establish plain error, Ms. Payton must first demonstrate that there was,

in fact, an error in determining her sentence. *See United States v. Cotton*, 535

U.S. 625, 631 (2002); *Gonzalez-Huerta*, 2005 WL 807008 *3. Under *Booker*,

district courts can commit two kinds of error when applying the Guidelines:

constitutional error and non-constitutional error. Constitutional error occurs if a

district court violates *Booker*'s Sixth Amendment holding: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756; *see also Gonzalez-Huerta*, 2005 WL 807008 *2. A district court may also commit non-constitutional error under *Booker*. The *Booker* remedial majority corrected the Sixth Amendment error created through mandatory application of the Sentencing Guidelines by severing the statutory section that required district courts to sentence within the Guidelines range. *Booker*, 125 S.Ct. at 756-57 (excising 18 U.S.C. § 3553(b)(1)); *Gonzalez-Huerta*, 2005 WL 807008 *2. While courts must still "consult" the Guidelines, *Booker*, 125 S.Ct. at 767, they now have the discretion to depart from the range recommended by the Guidelines. Thus, a court commits non-constitutional error by treating the Guidelines as binding.

There was no constitutional error in sentencing Ms. Payton. She pleaded guilty to violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846, and received the mandatory minimum sentence of 120 months. The district court's finding that she possessed firearms did not increase her sentence beyond the maximum authorized by her plea—indeed, she received the required minimum

sentence. The judicially found facts had no constitutionally significant impact on Ms. Payton's sentence.

Likewise, there was no non-constitutional *Booker* error in sentencing Ms. Payton. Based on the admitted facts in her guilty plea, the district court had no discretion under the statute to do other than impose the mandatory minimum sentence. *See United States v. Rojas-Coria*, 401 F.3d 871, 874 n.4 (8th Cir. 2005) (concluding that *Booker* does not apply to the application of mandatory minima); *United States v. Vieth*, 397 F.3d 615, 620 (8th Cir. 2005) (same).

Ms. Payton also argues that the district court's refusal to impose a sentence below the mandatory minimum through application of the § 5C1.2(a)(2) safety valve provision violated her Sixth Amendment rights. This argument relies on an overly broad understanding of *Booker*'s Sixth Amendment holding. *Booker* does not prohibit any and all judicial fact-finding; rather, *Booker* only proscribes judicial fact-finding that increases a sentence beyond the maximum authorized by the jury verdict. *Booker*, 125 S.Ct. at 756. Nothing in *Booker*'s holding or reasoning suggests that judicial fact-finding to determine whether a *lower* sentence than the mandatory minimum is warranted implicates a defendant's Sixth Amendment rights.

Ms. Payton also contends that the judicially found fact that she possessed firearms makes her ineligible for prison drug treatment programs. This argument

-10-

is not correct; at most this factual finding may imperil her early release if she successfully completes a drug treatment program. *See* 18 U.S.C. § 3621(e). Moreover, her eligibility for drug treatment programs is a matter for the Bureau of Prisons and is not properly before this Court. *See id.*

## III.

The judgment of the United States District Court for the District of Wyoming is **AFFIRMED**.