**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 7, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WELTON HARRIS,

    Defendant-Appellant.

No. 04-1239
(D. Colo.)
(D.Ct. No. 03-CR-275-N)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Appellant Welton Harris, a federal prisoner represented by counsel, pled guilty to one count of possession with intent to distribute more than fifty grams of crack cocaine, a Schedule II Controlled Substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(a)(iii).  He now challenges his sentence, claiming:  1) the district court erred by not applying a two-level downward departure for his minor role in the offense pursuant to United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) § 3B1.2(b); and 2) his sentence is contrary to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).  Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm Mr. Harris's conviction and sentence.

The facts surrounding the offense for which Mr. Harris pled guilty are largely contained in the plea agreement and statement of facts relevant to sentencing, to which he agreed and stipulated.  In December 2001, investigators from the Aurora Police Department Vice/Narcotics Unit received information from a confidential source, and later three other independently corroborated confidential sources, that co-defendants Michael Dunn and Stacy Whitaker were distributing large quantities of crack cocaine in the Denver, Colorado, area.  The investigation ultimately revealed Mr. Dunn and Mr. Whitaker supervised the conspiracy to distribute crack cocaine from June 2001 until June 2003.  During

the course of the investigation, investigators obtained court orders authorizing the interception of wire communications to and from cellular phones utilized by Mr. Dunn; in April 2003, investigators intercepted a telephone call between Mr. Dunn and Mr. Harris which led them to suspect Mr. Harris was a customer of Mr. Dunn's.

On May 21, 2003, investigators intercepted a telephone call between Mr. Dunn and Mr. Harris during which Mr. Dunn asked Mr. Harris if "she" had made it there, to which Mr. Harris replied in the affirmative. Mr. Harris later admitted he met twice with another co-defendant, Ms. Mayam Robinson, on that day and received approximately fifty-one grams of crack cocaine from her for which he paid her. Surveillance confirmed the money exchange transaction. Mr. Harris further admitted he generally ordered one ounce (twenty-eight grams) of crack cocaine per week from Mr. Dunn, which he customarily split up and sold to five or six other individuals. While Ms. Robinson provided him with the drugs, Mr. Harris admitted he knew the source to be Mr. Dunn. The course of dealings at issue took place over a two-month period, from April to June 2003.

Mr. Harris and ten other individuals were charged in a Superseding Indictment with conspiracy to distribute cocaine and conspiracy to distribute

cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a) and 846. The indictment also specifically charged Mr. Harris with conduct which occurred on May 21, 2003, for possession with intent to distribute more than fifty grams of cocaine base and for use of a telephone to facilitate the distribution in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and 843(b). Following his arrest, Mr. Harris entered a plea agreement in which he agreed to plead guilty to possession with intent to distribute more than fifty grams of crack cocaine. In exchange for Mr. Harris's guilty plea, the government agreed to dismiss the remaining counts against him, including the conspiracy count; recommend a sentence at the bottom of the Sentencing Guidelines range; and file motions requesting a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(b) and a two-level decrease for a minor role in the offense pursuant to § 3B1.2(b).

Despite the parties' agreement, the probation officer who prepared the presentence report disregarded the parties' characterization of Mr. Harris's conduct as having a minor role in the offense, and did not recommend a § 3B1.2(b) minor role adjustment, resulting in a total Guidelines range of 168 to 210 months. Likewise, at the sentencing hearing, the district court rejected the parties' assessment of Mr. Harris's conduct with respect to the minor role

adjustment and denied the government's motion in support thereof. In determining Mr. Harris's role in the offense, the district court held it would examine his relationship with the other people involved in the drug distribution only with respect to the sale of the fifty-one grams of cocaine which occurred on May 21, 2003, and to which Mr. Harris admitted and pled guilty. It then compared Mr. Harris's conduct with Mr. Dunn's as follows:

> The defendant, in the Court's view, can properly be characterized as a wholesaler in the distribution chain, buying from Dunn and reselling on his own to others. As to the transactions involved here, he sold the same amount of drugs that Dunn did, when you're considering the relevant conduct. He did not sell for Dunn, and he did not take direction from Dunn concerning resales to the defendant's customers. He did not rely on Dunn to set the price for his resales. While in the overall view he probably remains slightly less culpable than Dunn in the sense that Dunn was the supplier and he was a wholesaler, the Court cannot conclude that the defendant is less culpable than most other participants in the relevant conduct.

In so holding, the district court rejected Mr. Harris's argument that Mr. Dunn's conduct during the entire conspiracy should be considered.

The district court also concluded Mr. Harris was more culpable than Ms. Robinson, who, during the time of Mr. Harris's admitted involvement, worked primarily as a courier under the direction of Mr. Dunn. In so holding, the district court rejected Mr. Harris's argument that Ms. Robinson was more culpable, based on his allegations she helped Mr. Dunn cook cocaine. In rejecting this argument,

the district court questioned whether any evidence supported the allegation, and noted that even if she did assist in cooking the cocaine, her conduct was less culpable than Mr. Harris's conduct, stating, "cooking crack is not exactly rocket science. It involves basically putting cocaine hydrochloride in water and boiling it for a little while until the cocaine base is produced."

In regards to Mr. Harris's overall argument that his role in the offense should be evaluated against the other two defendants' conduct in the entire conspiracy and not merely the period covering the count to which he pled guilty, the following colloquy ensued:

"THE COURT: Well, would you like to have the probation officer go back and consider the entire conspiracy as the relevant conduct and then evaluate your minor role in relation to that entire conspiracy?

[COUNSEL]: I really wouldn't, Your Honor.

THE COURT: I didn't think so."

In rejecting Mr. Harris's relevant conduct argument, the district court described it as "trying to eat your cake and have it, too" or as "mixing apples and oranges," noting Mr. Harris could not contend his relevant conduct for the base offense level should be premised solely on the incident involving the sale of fifty-

one grams of cocaine on May 21, 2003, and then insist his relevant conduct for a minor role adjustment should be determined by a comparison of his conduct with the other defendants during the entire conspiracy. Finally, the district court concluded Mr. Harris did not carry "his burden of proving by a preponderance of the evidence that he is substantially less culpable than the average participant."

After denying the request for a downward departure under § 3B1.2(b), the district court also denied Mr. Harris's request for a downward departure for significant over-representation of the seriousness of his criminal history. However, it granted Mr. Harris a three-level reduction for acceptance of responsibility, resulting in a Guidelines range of 135 to 168 months imprisonment. It also granted the government's request for a downward departure for providing substantial assistance in the prosecution of other persons who committed offenses, stating:

> The length of incarceration to be imposed, which could be below the 135-month minimum but more than the 70 months recommended by the government, is found to be sufficient and necessary to achieve the statutory purposes of the sentence of incarceration, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, and to protect the public from further crimes of the defendant.

After considering these 18 U.S.C. § 3553 factors for sentencing, including "the nature and circumstances of the offense and the history and characteristics of the

defendant," it committed Mr. Harris to eighty-two months imprisonment — well below the minimum Guidelines sentence of 135 months imprisonment.

On appeal, Mr. Harris continues to assert the district court erred by not applying a two-level downward departure pursuant to U.S.S.G. § 3B1.2(b) for his minor role in the offense. His argument centers on his contention the district court construed the other two defendants' conduct too narrowly during the one drug transaction and, instead, it should have considered their conduct over the course of the entire conspiracy. In support, he asks us to consider Ms. Robinson's other, more egregious and inculpatory conduct, which he alleges included Mr. Dunn paying her to use her house to cook and store his crack cocaine and her assistance on several occasions in cooking and preparing the cocaine. He also suggests Mr. Dunn is much more culpable because he sold cocaine not only to Mr. Harris, but to many other individuals, resulting in him selling and distributing vastly larger amounts of cocaine than Mr. Harris.

In considering Mr. Harris's arguments, we note § 3B1.2 recommends a two-level offense reduction when a defendant is a minor participant in the offense. It applies to a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt.

n.3(A). Once a defendant's relevant conduct for sentencing purposes is determined, the same relevant conduct is used not only in determining the defendant's base offense level but also for any role in the offense adjustments. *See United States v. Carasa-Vargas*, ___ F.3d ___, ____, 2005 WL 1903730 at *3 (8th Cir. Aug. 11, 2005) (slip. op.); *United States v. Roberts*, 223 F.3d 377, 380-81 (6th Cir. 2000); *United States v. Rodriguez De Varon*, 175 F.3d 930, 940-41 (11th Cir. 1999). "A defendant has the burden of establishing, by a preponderance of the evidence, that he is entitled to a reduction in [his] base offense level under § 3B1.2." *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1131 (10th Cir. 2003) (internal quotation marks and citation omitted). Under § 3B1.2(b), mitigating role adjustments are "heavily dependent upon the facts of the particular case," *see* U.S.S.G. § 3B1.2 cmt. n.3(C), so that we treat a defendant's role in the offense for the purposes of downward departure as a factual finding subject to review under the clearly erroneous standard. *See United States v. v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir.), *cert. denied*, 125 S. Ct. 180 (2004); *United States v. Santistevan*, 39 F.3d 250, 253 (10th Cir. 1994). The "'clearly erroneous' standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions." *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 400 (1990).

In this case, Mr. Harris pled guilty to possession with intent to distribute fifty-one grams of cocaine, based on a drug transaction which occurred May 21, 2003, and admitted to ordering the crack cocaine from Mr. Dunn and receiving it from Ms. Robinson as an intermediary for Mr. Dunn. Because Mr. Harris pled guilty only to the amount of cocaine involved in the May 21, 2003 incident, this is the relevant conduct used for the purpose of determining both his offense level and any adjustments to his offense level for the purposes of § 3B1.2. *See Carasa-Vargas*, ___ F.3d at ___, 2005 WL 1903730 at \*3; *Roberts*, 223 F.3d at 380-81; *Rodriguez De Varon*, 175 F.3d at 940-41. Therefore, it was not unreasonable for the district court to compare Mr. Harris's relevant conduct on May 21, 2003, to Mr. Dunn's and Ms. Robinson's conduct on the same day and not in comparison to their conduct during the entire conspiracy.

The district court also did not act erroneously in concluding Mr. Harris was only slightly less culpable than Mr. Dunn, given he bought the cocaine from Mr. Dunn with the intent to sell it, thereby making the quantity of cocaine involved identical with respect to both defendants. In addition, based on the evidence in the record, it was also not erroneous for the district court to find Mr. Harris more culpable than Ms. Robinson, who, during the day at issue, acted as a courier under the direction of Mr. Dunn. While Mr. Harris now asks us to consider other

conduct by Ms. Robinson and Mr. Dunn which he claims establishes their more culpable roles, on appeal he neither provides a record cite or other record reference for his allegations nor explains whether this conduct occurred during the course of the entire conspiracy or on May 21, 2003, the day for which Mr. Harris is being held accountable. Generally, we do not consider factual allegations and arguments unsupported by citation to the record. *See United States v. Easter*, 981 F.2d 1549, 1555 n.4 (10th Cir. 1992). *See also* Fed. R. App. P. 10 (stating an appellant must include in the record a transcript of all evidence relevant to that finding or conclusion); Fed. R. App. P. 28(a)(7), (9) (stating an appellant's brief must contain a statement of facts and the argument with citations to the authorities and parts of the record on which the appellant relies). Thus, under the circumstances presented, Mr. Harris has failed to carry his burden of showing he is entitled to a reduction of his base offense level under § 3B1.2. For these reasons, we find the district court's denial of the requested downward departure is not clearly erroneous.

We next address Mr. Harris's contention his sentence is contrary to *Blakely v. Washington.* In *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), the Supreme Court applied the rule announced in *Blakely*, and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the Federal Sentencing Guidelines, holding the

Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at ___, 125 S. Ct. at 756. In addition, the *Booker* Court made the Sentencing Guidelines advisory rather than mandatory and, in so ruling, remedied any constitutional infirmity. *Id.* at 767; *United States v. Ambort*, 405 F.3d 1109, 1118 (10th Cir. 2005). Thus, we review sentences issued prior to *Booker* for both constitutional and non-constitutional error. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005). A constitutional *Booker* error occurs when a sentencing court relies on judge-found facts to enhance a defendant's sentence in violation of the Sixth Amendment, while a non-constitutional *Booker* error occurs when a court mandatorily applies the Federal Sentencing Guidelines, even if the sentence is calculated solely on facts admitted by the defendant, found by a jury, or based on a prior conviction. *Id.* As a result, we view Mr. Harris's argument on appeal not only in light of the Supreme Court's holding in *Blakely*, but also in light of its holding in *Booker*.

Because Mr. Harris did not raise his *Blakely/Booker* argument in the district court, we review his claims for plain error. *See Ambort*, 405 F.3d at 1118. "Plain

-12-

error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732.

To begin, Mr. Harris's downward departure claim does not present a constitutional *Booker* error because we do not consider denial of an offense level reduction based on judge-found facts an enhancement under *Booker*. *See United States v. Payton*, 405 F.3d 1168, 1173 (10th Cir. 2005). Specifically, we have said, "[n]othing in *Booker's* holding or reasoning suggests that judicial fact-finding to determine whether a *lower* sentence than the mandatory minimum is warranted implicates a defendant's Sixth Amendment rights." *Id.* Consequently, no constitutional *Booker* error occurred.

Next, we consider whether the district court committed a non-constitutional *Booker* error by mandatorily applying the Sentencing Guidelines, which we review for plain error, given he also failed to raise it before the district court. *See Gonzalez-Huerta*, 403 F.3d at 731-32. In reviewing his sentence, it is clear the first two factors in our plain error analysis occurred, because the district court sentenced him under a mandatory sentencing scheme. *Id.* In reviewing the third factor, as to whether the error affected substantial rights, the burden is on Mr.

Harris to show the error is prejudicial, *i.e.*, the error "'must have affected the outcome of the district court proceedings.'" *Ambort*, 405 F.3d at 1118, (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). In meeting this burden, he must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (quotation marks and citations omitted). Mr. Harris can meet this burden by demonstrating a reasonable probability that under the specific facts of the case, as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would reasonably impose a sentence outside the Guidelines range. *See United States v. Dazey*, 403 F.3d 1147, 1175 (10th Cir. 2005). In *Dazey*, we explained a defendant might make such a showing "if during sentencing the district court expressed its view that the defendant's conduct, based on the record, did not warrant the minimum Guidelines sentence." *Id.* We have said "[a] defendant can show a non-constitutional *Booker* error affected substantial rights with evidence of (1) a disconnect between the § 3553(a) factors and his sentence, and (2) the district court's expressed dissatisfaction with the mandatory Guidelines sentence in his case." *United States v. Clifton*, 406 F.3d 1173, 1181 (10th Cir. 2005).

In this case, Mr. Harris was sentenced below the minimum Guidelines range of 135 months and he has not met his burden of demonstrating a reasonable

probability that under the specific facts presented, as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would impose a sentence below the one already imposed. *See Dazey*, 403 F.3d at 1175 & n.5. Nothing in the record indicates the district court was dissatisfied with Mr. Harris's sentence or preferred to give him a lower sentence. In analyzing the sentencing factors in 18 U.S.C. § 3553(a), the district court explicitly declined to reduce Mr. Harris's sentence to the seventy months imprisonment suggested by the government in support of a downward departure for Mr. Harris's substantial assistance in prosecuting others. Instead, in granting this discretionary downward departure, the district court sentenced Mr. Harris to eighty-two months imprisonment. This discretionary departure, together with its refusal to grant a discretionary downward departure either for his minor role in the offense or for over-representation of his criminal history, further indicates the district court's satisfaction with Mr. Harris's sentence and that it would give the same sentence under even an advisory sentencing scheme. *See United States v. Lawrence*, 405 F.3d 888, 908 (10th Cir. 2005). Under these circumstances, Mr. Harris has failed to establish a reasonable probability the district court judge would impose a lower sentence if not bound by pre-*Booker* mandatory constraints. Because Mr. Harris fails to meet his burden with respect to the third prong, it is unnecessary for us to address the last prong, given all four prongs must be met for successful plain

error resolution.

For the reasons set forth above, we **AFFIRM** Mr. Harris's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge
