FILED
United States Court of Appeals
Tenth Circuit

March 5, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CARLOS ANDRADE-VARGAS,

    Defendant-Appellant.

No. 11-4125
(D.Ct. No. 2:10-CR-01132-TC-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BRORBY**, Senior Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Appellant Carlos Andrade-Vargas pled guilty to possession of heroin with

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

intent to distribute in violation of 21 U.S.C. § 841(a)(1). He now appeals his sixty-month sentence, claiming the district court erred in finding him ineligible for a two-level safety valve reduction under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 5C1.2 based on his possession of a firearm in connection with his drug trafficking offense. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm Mr. Andrade-Vargas's sentence.

## I. Factual and Procedural Background

Following controlled heroin purchases from Mr. Andrade-Vargas, agents with the Drug Enforcement Agency (DEA) obtained search warrants for two Utah residences identified as being used by Mr. Andrade-Vargas to facilitate his drug trafficking activities, including a house on South Edison in Salt Lake City and an apartment at 700 East in Murray. On December 8, 2010, prior to the execution of the search warrants, task force agents saw Mr. Andrade-Vargas and another male drive away from the South Edison residence in a black sports utility vehicle (SUV). Once the SUV stopped and agents approached and identified themselves, Mr. Andrade-Vargas placed a balloon in his mouth which, when removed, contained 36.7 grams of heroin. A sweep of his vehicle also produced 142.9 grams of heroin in multiple plastic bags. Agents then executed the search warrant at the South Edison residence but did not find anything of evidentiary value.

Agents also executed the second search warrant at the 700 East apartment where Mr. Andrade-Vargas lived with his girlfriend; they found ammunition for a 45-caliber firearm and $900 which matched the serial numbers of bills previously used by agents to purchase heroin from Mr. Andrade-Vargas.

After his arrest and during an interview with agents at the DEA office, Mr. Andrade-Vargas stated he also rented a basement bedroom at a residence located in West Valley City, Utah. Thereafter, the homeowner consented to agents entering Mr. Andrade-Vargas's bedroom, where they found 147.3 grams of heroin under a couch and two semi-automatic handguns, including a 9mm Hi Point and a Kimber Custom TLE II, under the couch cushion. Agents also discovered packaging materials, scales, and 9mm and 45-caliber ammunition, as well as "pay/owe" sheets and documents establishing Mr. Andrade-Vargas's occupancy of the bedroom.

In his interview, Mr. Andrade-Vargas stated he had been distributing heroin in the Salt Lake City area since June 2010 and claimed another man gave him the firearms found in the basement bedroom to hold for him while he went to Mexico; however, Mr. Andrade-Vargas admitted he knew the firearms were in the basement apartment and under his control. Following his interview, authorities verified Mr. Andrade-Vargas's status as a Mexican national who entered the

United States illegally and determined the heroin seized from Mr. Andrade-Vargas's person, vehicle, and basement bedroom totaled 326.9 grams.

Following his two-count indictment for drug trafficking and knowing possession of a firearm and ammunition by an illegal alien, Mr. Andrade-Vargas entered into a written plea agreement in which he agreed to plead guilty to one count of possession with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1). He also stipulated he possessed between 100 and 400 grams of heroin with the intent to distribute it to others, drove the vehicle in which agents found heroin, and knew of the heroin in the basement apartment which he stipulated was "therefore also in my possession."

Following the district court's acceptance of Mr. Andrade-Vargas's guilty plea, a probation officer prepared a presentence report, applying the 2010 Guidelines. Using these Guidelines, the probation officer calculated Mr. Andrade-Vargas's base offense level at 26 under U.S.S.G. § 2D1.1(c)(7) because of his stipulation to possession with intent to distribute 100 grams or more of heroin. The probation officer also recommended a two-level increase in the offense level for possession of firearms under U.S.S.G. § 2D1.1.(b)(1) and a three-level reduction in the offense level for Mr. Andrade-Vargas's acceptance of responsibility, for a total offense level of 25. A total offense level of 25, together

with a criminal history category of I, resulted in a recommended advisory Guidelines range of fifty-seven to seventy-one months imprisonment. However, the probation officer determined a Guidelines range of sixty to seventy-one months imprisonment should apply instead because the mandatory minimum for an offense under 21 U.S.C. § 841(b)(1)(B) is five years. Finally, the probation officer found no information warranting a downward or upward departure or variance.

Thereafter, Mr. Andrade-Vargas did not object to any of the findings or calculations in the presentence report but, instead, filed a sentencing memorandum requesting the district court apply a two-level safety valve reduction under U.S.S.G. § 5C1.2. Section 5C1.2 allows the court to impose a sentence in accordance with the applicable Guidelines without regard to the statutory minimum sentence if certain criteria are met, including if the defendant did not possess a firearm or other dangerous weapon "in connection with the offense." U.S.S.G. § 5C1.2(a)(2). In making his request for a reduction, Mr. Andrade-Vargas relied on *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184 (10th Cir. 2004), to argue that § 5C1.2(a)(2) requires actual or active possession of a weapon, rather than constructive possession, in order to disqualify him for such a reduction. He then claimed he "did not actively possess a firearm in connection with" his drug trafficking offense because: (1) "he was not actively

possessing the firearm at the time his house was searched," even though "additional drugs and the unloaded firearms were later found at his home"; (2) he "was only holding the firearms found in his home for a friend, rather than for protection during drug deals"; (3) "the drugs were found under a couch, while both firearms were found under a cushion of the couch of a bedroom" that was neither a room he slept in nor in a house he lived in; (4) no evidence showed anyone saw him possessing a firearm or that he used or threatened anyone with firearms; and (5) no firearms were found with the heroin in the vehicle he drove or on his person.

At the sentencing hearing, Mr. Andrade-Vargas again requested application of a U.S.S.G. § 5C1.2 safety valve reduction on the same grounds. In turn, the government argued the burden rested on Mr. Andrade-Vargas to prove he was eligible for the safety valve, and his mere statement he was holding the guns for another was insufficient proof when considered with the other incriminating evidence agents found in the rented basement bedroom which he admitted having exclusive possession over.

Following the parties' arguments, the district court denied Mr. Andrade-Vargas's request for a safety valve reduction, noting dissimilarities existed between the circumstances in the instant case and those in *Zavalza-Rodriguez*, on

which Mr. Andrade-Vargas relied. It explained the evidence in *Zavalza-Rodriguez* suggested the defendant only spent one night at another person's residence, leaving a question as to how long he had been at the residence where authorities found drugs and the firearm for the purpose of determining he met his burden of demonstrating the gun was unconnected with the drug trafficking offense. *See* 379 F.3d at 1184. In contrast, the district court explained that in the instant case, the basement bedroom belonged to Mr. Andrade-Vargas, even though he lived with his girlfriend elsewhere, and he used that bedroom to store his drugs and packaging materials, which agents found in the same room with the firearms. Under these circumstances, it determined Mr. Andrade-Vargas did not meet his burden of showing he did not possess the firearms in connection with the drug offense for the purpose of applying a safety valve reduction. It also relied on two unpublished Tenth Circuit cases which it found "quite instructive" and which, it explained, "stress[ed] the proximity of the firearm to the drugs" in determining whether a safety valve reduction applied. *See United States v. Montgomery*, 387 F.App'x 884, 887-88 (10th Cir. 2010) (unpublished op.); *United States v. Castaneda Ascencio*, 260 F.App'x 69, 72 (10th Cir. 2008) (unpublished op.). Relying on these cases, it found the proximity of the handguns, discovered under the couch cushion, to the heroin, located under the couch, was also significant for the purpose of denying his request for a safety valve reduction. Following Mr. Andrade-Vargas's allocution, the district court imposed a sentence

at the low end of the recommended minimum statutory Guidelines range for a term of sixty months imprisonment.

## II. Discussion

Mr. Andrade-Vargas now appeals his sixty-month sentence, relying exclusively on *Zavalza-Rodriguez* in support of the same safety valve issues he presented to the district court and contending the "undisputed evidence of [his] conduct demonstrated that the firearms were not used in connection with drug dealing." In so doing, Mr. Andrade-Vargas suggests the government failed to present any evidence to rebut his statement he was storing the weapons in the rented basement bedroom for a friend, including providing evidence he ever used a gun in connection with any drug distribution activity. In absence of any evidence of actual possession or use of a firearm in connection with a drug trafficking offense, Mr. Andrade-Vargas contends evidence of constructive possession is insufficient under *Zavalza-Rodriguez* to find him ineligible for the safety valve reduction, including the proximity of the firearms to the drugs. Other than the safety valve issue, Mr. Andrade-Vargas does not appeal the reasonableness of his sentence.

In turn, the government relies on *United States v. Hallum*, 103 F.3d 87, 89 (10th Cir. 1996), *United States v. Payton*, 405 F.3d 1168, 1171 (10th Cir. 2005),

and multiple Tenth Circuit unpublished cases issued since our decision in *Zavalza-Rodriguez* to argue both actual and constructive possession may be considered in determining if a defendant's conduct shows he possessed firearms in connection with his drug trafficking offense, including the proximity of such firearms to drugs, ammunition, and other drug-related items, as well as the potential of those firearms to facilitate the offense. The government also points out Mr. Andrade-Vargas admitted he was aware of and had control over the handguns and provided no evidence to carry his burden of establishing eligibility for safety valve relief, other than his self-serving statement during his arrest that he held the guns for someone else whom he failed to identify.

We begin with a discussion of our standard of review and the applicable legal principles. We review a district court's determination on safety valve eligibility for clear error, giving due deference to the district court's application of the Guidelines to the facts. *See Zavalza-Rodriguez*, 379 F.3d at 1184. "Clear error exists if a factual finding is wholly without factual support in the record, or after reviewing the evidence, we are definitively and firmly convinced that a mistake has been made." *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) (internal quotation marks omitted). While "[t]he government bears the burden of proving sentencing enhancements by a preponderance of the evidence," *United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009), the defendant bears the

burden of showing by a preponderance of the evidence he is eligible for safety valve relief, *see Payton*, 405 F.3d at 1170-71.

Guidelines § 2D1.1(b)(1), concerning offenses involving drugs, provides for a two-level enhancement in the offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Generally, we have held possession under § 2D1.1(b)(1) is satisfied by a showing of mere proximity to the offense, *see United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997), and this burden is satisfied when the government demonstrates "a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Zavalza-Rodriguez,* 379 F.3d at 1185 (internal quotation marks omitted). As a result, the government need only show the weapon was found in the same location where drugs or drug paraphernalia are stored for the § 2D1.1 enhancement to apply. *See id.* at 1186. Thus, an enhancement under § 2D1.1(b)(1) may apply to a defendant even when his co-conspirator possessed the weapon. *See id.* at 1186.

In turn, the Guidelines safety valve provision permits a defendant to receive a sentence below the statutory minimum where he "did not ... *possess a firearm or other dangerous weapon ... in connection with the offense*." U.S.S.G. § 5C1.2(a)(2) (emphasis added). In *Zavalza-Rodriguez*, we held an enhancement

to a sentence under § 2D1.1(b)(1) does not necessarily preclude qualification for a safety valve reduction under § 5C1.2, stating:

> [S]entence enhancement pursuant to § 2D1.1(b)(1) does not foreclose sentence reduction pursuant to § 5C1.2(a)(2). The scope of activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2. For purposes of § 2D1.1 constructive possession, either physical proximity or participation in a conspiracy, is sufficient to establish that a weapon "was possessed." Whereas for purposes of § 5C1.2 we look to *the defendant's own conduct* in determining whether the defendant has established by a preponderance of the evidence that the weapon was not possessed "*in connection with the offense*."

379 F.3d at 1188 (emphasis added) (relying in part on U.S.S.G. § 5C1.2 cmt. n.4). As previously indicated, the defendant in *Zavalza-Rodriguez* denied knowledge of a gun found in a bedroom of a house where he apparently lodged for only one night for the purpose of establishing he did not possess the weapon in connection with the drugs found in the home. *Id.* at 1184. In affirming the district court's § 5C1.2 reduction, we explained § 2D1.1(b)(1) merely requires "constructive possession" based on proximity of the gun, while § 5C1.2 requires "active possession" based on *the defendant's conduct* where "there is a close connection linking the individual defendant, the weapon and the offense." *Id.* at 1187.

In *Zavalza-Rodriguez*, we also distinguished the facts in that case from those in *Hallum*, where we held "a firearm's proximity and potential to facilitate the offense is enough to prevent application of" the safety valve provision. 103

-11-

F.3d at 89.  We explained that while Mr. Zavalza-Rodriguez denied knowledge of the gun, Mr. Hallum admitted the rifle, found in the truck he used for his drug trafficking offense, belonged to him.  *See* 379 F.3d at 1184, 1186 n.2.  In *Hallum*, we affirmed the district court's determination Mr. Hallum failed to provide sufficient evidence establishing he had the rifle in his truck for a purpose unconnected with his drug trafficking offense and, in so doing, relied, in part, on the firearm's proximity to the drugs and its potential to facilitate the offense.  *See* 103 F.3d at 89-90.

As the government points out, since *Zavalza-Rodriguez*, we and other circuit courts have focused on the defendant's conduct, whether through actual or constructive possession of a firearm, to determine if the firearm is connected with the drug trafficking offense for the purposes of a § 5C1.2 reduction.  *See United States v. Herrera*, 446 F.3d 283, 287-88 & n.5 (2d Cir. 2006) (holding nothing in *Zavalza-Rodriguez* prevents consideration of constructive possession in denying safety valve reduction when based on defendant's own conduct where defendant keeps weapon under his personal dominion and control); *Payton*, 405 F.3d at 1170-71 (affirming denial of § 5C1.2 reduction for actual possession where defendant's apartment contained five firearms stored in close proximity to substantial amounts of methamphetamine); *United States v. Bolka*, 355 F.3d 909, 915-16 (6th Cir. 2004) (holding defendant not entitled to safety valve relief where

evidence shows he kept three firearms in home where he sold and manufactured drugs).[1] In so doing, we have continued to rely on our holding in *Hallum* that a firearm's proximity and potential to facilitate the offense may be sufficient to prevent application of the safety valve provision, *see* 103 F.3d at 89, including when "[t]he mere propinquity of the weapons and drugs suggests a connection between the two." *Payton*, 405 F.3d at 1171. Even if a defendant does not have "actual possession" of a firearm by means of "direct physical control over a firearm at a given time," *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007), we have said constructive possession exists if a person "knowingly holds the power and ability to exercise dominion and control" over the firearm. *United States v. King*, 632 F.3d 646, 651 (10th Cir. 2011) (internal quotation

---

[1] *See also Montgomery*, 387 F.App'x at 887-88 (relying on *Herrera* to hold constructive possession of firearm in residence where defendant and another person operated drug conspiracy is sufficient to deny safety valve reduction); *United States v. Gonzalez-Ambriz*, 353 F.App'x 155, 157 (10th Cir. 2009) (unpublished op.) (applying *Payton* and *Hallum* in upholding denial of safety valve reduction where firearm located in defendant's bedroom closet was close to drugs, money, and drug paraphernalia); *Castaneda Ascencio*, 260 F.App'x at 72 (relying on *Payton* and *Hallum* to determine mere propinquity of weapons and drugs suggested a connection between weapon and drugs sufficient to prevent application of § 5C1.2(2) where weapon was located in hall closet in defendant's small apartment not far from the drugs and readily accessible to anyone in apartment); *United States v. Archuleta*, 257 F.App'x 116, 123-24 (10th Cir. 2007) (unpublished op.) (relying on *Hallum* and determining firearm accessible to defendant in his vehicle where he intended to conduct drug transaction met "in connection with offense" criterion for purpose of denying safety valve reduction). While none of these cases relied on by the government are precedential, they may be cited for their persuasive value. *See* Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

marks omitted). "When a defendant has exclusive possession of the premises on which a firearm is found, knowledge, dominion, and control can be properly inferred because of the exclusive possession alone." *Jameson*, 478 F.3d at 1209. Indeed, "control over the premises where the firearm is found can be a strong indicator of constructive possession." *King*, 632 F.3d at 651.

In this case, the government presented evidence Mr. Andrade-Vargas possessed the firearms in close proximity to the drugs for the purpose of enhancing Mr. Andrade-Vargas's sentence under § 2D1.1(b)(1), which Mr. Andrade-Vargas does not contest on appeal. However, as Mr. Andrade-Vargas contends, such an enhancement did not automatically preclude the district court from granting his request for a safety valve reduction. Instead, as required under *Zavalza-Rodriguez*, the district court considered Mr. Andrade-Vargas's *conduct* with respect to the handguns discovered. It found Mr. Andrade-Vargas did not qualify for a safety valve reduction because the basement bedroom in question belonged to Mr. Andrade-Vargas and he used that bedroom to store his drugs and packaging materials, which were found together with the firearms. It is clear this factual determination is supported by Mr. Andrade-Vargas's own uncontested admissions, in both his plea agreement and during his DEA interview, that he rented the basement apartment, knew the firearms were in the apartment and under his control, and knew of and possessed the heroin in the basement bedroom.

-14-

Indeed, this shows a "close connection" existed linking Mr. Andrade-Vargas, the weapons, and the offense, as required by *Zavalza-Rodriguez*, for the purpose of denying a safety valve reduction. 379 F.3d at 1187.

To the extent Mr. Andrade-Vargas relies on *Zavalza-Rodriguez* to suggest close proximity of the firearms and drugs may never be relied on for the purposes of U.S.S.G. § 5C.1(2) or that one must have actual physical possession of the firearm to make him ineligible for a safety valve reduction, he is mistaken. In addition, as the district court indicated, the facts in that case are clearly distinguishable from those presented here. Mr. Andrade-Vargas admitted knowledge and control of the firearms found in the bedroom he rented and had exclusive control over, while Mr. Zavalza-Rodriguez demonstrated no such knowledge of the firearm found in someone else's home over which he lacked exclusive possession.

As to Mr. Andrade-Vargas's claim the handguns belonged to someone else, he nevertheless admitted having knowledge and control of the handguns found in his rented bedroom where he conducted his activities, and there is no requirement one must own the firearms in question to be ineligible for a safety valve reduction. Instead, as previously explained, possession may be demonstrated by one's own conduct, where, for instance, one "knowingly holds the power and

ability to exercise dominion and control" over the firearm, especially where, as here, the defendant had exclusive possession of the premises where it was found, *see King*, 632 F.3d at 651, and the firearm had the requisite proximity and potential to facilitate the drug trafficking offense*, see Hallum*, 103 F.3d at 89. Moreover, it is evident that, in denying the reduction, the district court discredited Mr. Andrade-Vargas's seemingly self-serving claims he did not own the handguns and that they were not in the room for the purpose of facilitating his drug trafficking activities–both of which were unsupported by any evidence. We have long recognized firearms are tools of the trade for drug traffickers, *see United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991), and a district court's determination on whether to apply a safety valve reduction "is fact specific and dependent on credibility determinations that cannot be replicated with the same accuracy on appeal," *United States v. Stephenson,* 452 F.3d 1173, 1180 (10th Cir. 2006).

Under the circumstances presented, the district court's factual findings are not without factual support in the record nor are we otherwise left with a definite and firm conviction a mistake has been made. Rather, Mr. Andrade-Vargas's own *conduct* demonstrates a close connection linking him, the weapons, and the offense, as required by *Zavalza-Rodriguez*, and Mr. Andrade-Vargas has not otherwise met his burden of proving by a preponderance of the evidence that he

did not possess the weapons in connection with his drug trafficking offense. As a result, we conclude the district court did not err in denying a safety valve reduction under § 5C1.2.

## III. Conclusion

Accordingly, we **AFFIRM** Mr. Andrade-Vargas's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge