**UNITED STATES of America,**
**Appellee,**

**v.**

**Carlos HERRERA, Nicholas Ibarra,**
**Jaime Chavez, Gregorio Barraza,**
**Danny Barraza, Defendants,**

**Jose L. Barraza, Defendant–Appellant.**

**Docket No. 05–1454 CR.**

United States Court of Appeals,
Second Circuit.

Submitted: Jan. 24, 2006.

Decided: May 2, 2006.

Sanford Talkin, Talkin, Muccigrosso & Roberts, New York, NY, for Defendant–Appellant.

Michael J. Garcia, United States Attorney for the Southern District of New York (Anirudh Bansal, John Hillerbrecht, Assistant United States Attorneys, of counsel), for Appellee.

Before: WALKER, Chief Judge, LEVAL, SOTOMAYOR, Circuit Judges.

LEVAL, Circuit Judge.

Defendant Jose Luis Barraza appeals from a sentence imposed by the United States District Court for the Southern District of New York (Gerard E. Lynch, *J.*) after Barraza pleaded guilty to conspiring to distribute, and possess with intent to distribute, more than five kilograms of powder cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846. The district court imposed a sentence primarily of 168 months incarceration and 5 years supervised release. The period of imprisonment was within the range specified in the United States Sentencing Guidelines, as calculated by the district court. In making its Guidelines calculation, the district court found that Barraza had been jointly responsible for drug stash houses where firearms were kept and exercised personal dominion and control over those weapons. The court, therefore, concluded that Barraza did not qualify for safety-valve relief from a mandatory minimum sentence under 18 U.S.C. 3553(f) and U.S.S.G. § 5C1.2, which depends in part on not possessing a firearm in connection with the offense, and was not entitled to a two-level reduction in his offense level under U.S.S.G. § 2D1.1(b)(9), which is accorded to one who meets specified qualifications for the safety valve. Barraza argues on appeal that his constructive possession of the firearms should not disqualify him from safety-valve relief or from the two-level Guidelines reduction. We reject his argument and affirm.

**Background**

Barraza pleaded guilty to conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine. At sentencing, the district court found that Barraza's offense level was 35, with a crim-

inal history category of I, which resulted in a Guidelines range of 168 to 210 months. The court found that Barraza had been jointly responsible for stash houses where members of the conspiracy had kept cocaine, proceeds from cocaine sales, and several firearms. The court concluded that Barraza had constructive possession of the firearms, and therefore increased his Guidelines offense level by two pursuant to U.S.S.G. § 2D1.1(b)(1), which provides for such an increase where "a dangerous weapon (including a firearm) was possessed" in connection with certain drug offenses.

Barraza asked the court to rule that he qualified for the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and for the two-level reduction provided by U.S.S.G. § 2D1.1(b)(9). Section 5C1.2(a) specifies that for a defendant convicted of certain narcotics offenses, "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence"—when, among other requirements, "the defendant did not ... possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(a)(2). *See also* 18 U.S.C. § 3553(f)(2). A defendant who meets certain criteria for the safety valve also obtains a two-level reduction in his Guidelines offense level under U.S.S.G. § 2D1.1(b)(9), even if he does not face a mandatory minimum sentence.[1] *See United States v. Osei,* 107 F.3d 101, 104 (2d Cir.1997) (per curiam). The district court found that because Barraza exercised personal dominion and control over firearms in connection with his offense, he did not qualify for the safety-valve and the two-level reduction.

The district court's finding of Barraza's possession of the guns was based in part on evidence adduced at the trial of two of Barraza's co-defendants in January 2005. Nicholas Ibarra, another co-defendant, testified that he and Barraza had maintained stash houses, first on Crotona Boulevard and then later on Bruckner Boulevard, where they hid cocaine and money obtained through cocaine sales. Ibarra recounted an occasion on which he and Barraza counted money stored at the Crotona Boulevard stash house. Ibarra also testified that in September 2002 he and Barraza delivered $1,000,000 in narcotics proceeds from the Bruckner Boulevard stash house to a cocaine supplier in exchange for 40 kilograms of cocaine. In a wiretap interception played at the trial, Ibarra was heard asking Barraza to give him $30,000 from the Bruckner Boulevard stash house so that Ibarra could make a payment for their cocaine enterprise.

Ibarra testified that guns were kept at the stash houses "for protection ... from thieves or anybody else"; according to Ibarra, a 9–millimeter handgun and .38–caliber handgun were kept at the Crotona Boulevard stash house, and a .45–caliber handgun was added when they moved to Bruckner Boulevard. When the Bruckner Boulevard stash house was searched by federal agents in September 2002, they found twenty-five kilograms of cocaine, a money counter, and two firearms, as well as a 9–millimeter handgun on Ibarra, who was arrested standing outside the stash house. Ibarra testified that the 9–millimeter gun in his possession at the time of his arrest was generally kept in the stash house. Barraza's driver's license and social security card were recovered from the Bruckner Boulevard stash house in May 2003.

---

**1.** What is now U.S.S.G. § 2D1.1(b)(9) was, at the time of sentencing, U.S.S.G. § 2D1.1(b)(6).

In addition, in a July 16, 2004 proffer made by Barraza for the purpose of obtaining safety-valve relief, he admitted that he had participated in the narcotics distribution conspiracy, and that he had helped Ibarra and another co-defendant, Gregorio Barraza, to store and retrieve roughly 40 kilograms of cocaine in New York in 2002. He also admitted that when he was at one of the New York stash houses, Ibarra had shown him a silver firearm kept in a dresser drawer.

Barraza appeals from his sentence.

### Discussion

On appeal, Barraza does not contest the increase in his offense level for gun possession pursuant to § 2D1.1(b)(1). His sole argument is that the district court erred in finding him ineligible for safety-valve relief and for the two-level reduction provided by § 2D1.1(b)(9).[2] Barraza argues that the district court erroneously assumed that because he received the weapon possession enhancement under § 2D1.1(b)(1), it necessarily followed that he was ineligible for the safety valve and the two-level reduction under § 2D1.1(b)(9).

Notwithstanding that a defendant is ineligible for the safety valve if the defendant "possess[es]" a firearm in connection with the offense, 18 U.S.C. § 3553(f)(2), other circuits have held that a defendant who receives a two-level increase under § 2D1.1(b)(1) for possession of a dangerous weapon may nonetheless be eligible for safety-valve relief. See, e.g., United States v. Zavalza–Rodriguez, 379 F.3d 1182, 1188 (10th Cir.2004); United States v. Nelson, 222 F.3d 545, 551 (9th Cir.2000). In particular, the courts of appeals repeatedly have held that the possession of a weapon by the defendant's co-conspirator in a manner that would trigger the increase in the defendant's sentence provided for by § 2D1.1(b)(1), does not necessarily mean that the defendant possessed the weapon in a manner that would preclude entitlement to the safety valve. See United States v. Figueroa–Encarnacion, 343 F.3d 23, 35 (1st Cir.2003); United States v. Pena–Sarabia, 297 F.3d 983, 989 (10th Cir. 2002); United States v. Clavijo, 165 F.3d 1341, 1343 (11th Cir.1999); United States v. Wilson, 114 F.3d 429, 432 (4th Cir.1997); In re Sealed Case, 105 F.3d 1460, 1462 (D.C.Cir.1997); United States v. Wilson, 105 F.3d 219, 222 (5th Cir.1997) (per curiam); see also U.S.S.G. § 5C1.2 cmt. n.4 ("[T]he term 'defendant,' as used in subsection (a)(2), limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused.").

Barraza's argument is based on a mistaken premise. The district court did *not* assume that, because Barraza incurred the two-level increase under § 2D1.1(b)(1), he was automatically ineligible for the safety valve. To the contrary, the district court assumed that in some circumstances—such as where the increase under § 2D1.1(b)(1) was based on possession of a weapon by a co-conspirator—a defendant would not be disqualified from the safety valve. The district court concluded, however, that in this case Barraza had the firearms within his personal dominion and control, and that constructive possession of the firearms based on such personal dominion and

---

**2.** As we understand it, the safety valve would in any event have had no effect on this case, because Barraza's guideline range would still have been above the mandatory minimum sentence of 120 months provided by 21 U.S.C. § 841(b)(1)(A), even if he received the two-level reduction under § 2D1.1(b)(9). Nonetheless, Barraza might have benefitted from the two-level reduction itself. If, however, Barraza possessed a weapon in such a manner as to make him ineligible for safety-valve relief, then he was also ineligible for the two-level reduction.

control not only called for the two-level increase, but also made Barraza ineligible for the safety valve and the related reduction under § 2D1.1(b)(9).

In order to resolve this appeal, we need not consider the relationship between § 2D1.1(b)(1) and the safety valve provisions. We need not determine whether a finding of constructive possession sufficient to trigger the increase under § 2D1.1(b)(1) might, in some circumstances, leave the defendant eligible for the safety valve. The only question before us is whether the district court erred in the conclusion that the defendant's constructive possession, based on his *personal* dominion and control over that weapon, made him ineligible for safety valve relief. The defendant's argument depends on the proposition that the possession which disqualifies a defendant from the safety valve can be satisfied only by actual or direct possession and not by any form of constructive possession.[3]

In numerous contexts, the concept of possession of a weapon encompasses not only physical possession but constructive possession as well. For example, when considering whether a defendant was subject to a mandatory minimum sentence under 18 U.S.C. § 924(c)(1) for possessing a firearm in furtherance of a crime of violence or drug trafficking offense, we held that "[p]ossession of a firearm may be established by showing that the defendant knowingly [had] the power and the intention at a given time to exercise dominion and control over [it]." *United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001) (internal quotation marks omitted). Likewise, to prove that a convicted felon possessed a firearm in violation of 18 U.S.C. § 922(g), "[t]he government need not prove that [the defendant] physically possessed the firearm to establish a § 922(g) violation; proof of constructive possession is sufficient." *Payton,* 159 F.3d at 56. And we have explained that a defendant is subject to a two-level enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon if he "constructively possessed the weapon by having . dominion ... or control over the item itself, or dominion over the premises where the item [was] located." *United States v. Ortega,* 94 F.3d 764, 768 (2d Cir.1996) (internal quotation marks omitted); *see also United States v. Pellegrini,* 929 F.2d 55, 56 (2d Cir.1991) (per curiam).

We see no reason why, for purposes of the safety valve, possession would not similarly include constructive possession, at least where the defendant keeps the weapon under his personal dominion and control. *See United States v. Bolka,* 355 F.3d 909, 915–16 (6th Cir.2004) (holding that defendant was not entitled to safety-valve relief where evidence showed that he kept three firearms in the home where he sold and manufactured methamphetamine). The safety valve was intended to prevent mandatory minimum sentences from causing the "least culpable offenders [to] receive the same sentences as their relatively more culpable counterparts." H.R. Rep. 103–460, at 4 (1994), *reprinted at* 1994 WL 107571. There is little meaningful difference in culpability between the defendant who possesses a firearm on his person while committing a drug offense and a defendant who has a firearm within his personal dominion and control while committing that same offense. As the First

---

**3.** In *United States v. Payton,* 159 F.3d 49, 56 (2d Cir.1998), we explained that constructive possession is established by showing that the defendant exercised "dominion and control" over a weapon. In this case, the district court did not rely on the broadest concept of dominion and control, such as might result from a defendant's relationship with another person who possessed a weapon, but instead relied on the defendant's personal exercise of dominion and control over the weapons.

Circuit has explained, "a defendant who, for example, has a concealed weapon strategically placed in a room where he conducts his drug business is no less dangerous that a defendant who conducts his business with a weapon on his person." *United States v. McLean*, 409 F.3d 492, 501 (1st Cir.2005).[4]

In this case, there was substantial and uncontested evidence supporting the district court's conclusion that Barraza and Ibarra were jointly responsible for the stash houses and that each exercised personal dominion and control over the firearms in those locations. *See United States v. Gaines*, 295 F.3d 293, 300 (2d Cir.2002) (explaining that under a constructive possession theory, "possession need not be exclusive"); *United States v. Dhinsa*, 243 F.3d 635, 677 (2d Cir.2001) (when determining whether a defendant exercised constructive possession, "[i]t is of no moment that other individuals also may have exercised control over the weapons"); *Payton*, 159 F.3d at 56 (under a constructive possession theory, "[t]he government need not disprove that the weapon was subject to the dominion and control of others"). We believe the district court was entirely correct in finding Barraza ineligible for safety valve relief, as well as for the two-level reduction under § 2D1.1(b)(9).[5]

## Conclusion

The judgment of the district court is affirmed.

4. In *McLean*, 409 F.3d at 501, the First Circuit ruled that "a defendant who has constructively possessed a firearm in connection with a drug trafficking offense is ineligible for the safety valve provisions set forth at 18 U.S.C. § 3553(f)." The *McLean* court appears to have adopted the position that any form of constructive possession—including a defendant's dominion and control over another person in possession of a weapon—can disqualify a defendant from safety valve eligibility. In this case, the district court relied on the narrower ground that personal dominion and control constitutes possession for purposes of the safety valve, and it is on that ground that we affirm.

5. The cases relied on by Barraza, *United States v. Zavalza–Rodriguez*, 379 F.3d 1182 (10th Cir.2004), and *In re Sealed Case*, 105 F.3d 1460 (D.C.Cir.1997), are not to the contrary. In *Zavalza–Rodriguez*, the Tenth Circuit held that "sentence enhancement pursuant to § 2D1.1(b)(1) does not foreclose sentence reduction pursuant to § 5C1.2(a)(2)." 379 F.3d at 1188. The court explained that "[f]or purposes of § 2D1.1 constructive possession, either physical proximity or participation in a conspiracy, is sufficient to establish that a weapon 'was possessed.' Whereas for purposes of [the safety valve] we look to the defendant's own conduct in determining whether the defendant has established by a preponderance of the evidence that the weapon was not possessed 'in connection with the offense.'" *Id.* There is no suggestion in *Zavalza–Rodriguez* that constructive possession can never constitute possession for purposes of the safety valve. In *Sealed Case*, the defendant sat in a restaurant while a co-conspirator engaged in a drug deal outside. The co-conspirator's gun was under the driver's seat of the co-conspirator's car, there was no indication in the record that the defendant traveled to the restaurant in the co-conspirator's car, and the defendant was arrested immediately after the sale took place. 105 F.3d at 1461, 1464. The court held that a co-conspirator's possession of a firearm did not constitute possession by the defendant under the safety valve. *Id.* at 1462–63. The court also held that on the facts before it the defendant did not have constructive possession of the firearm because it was never in his dominion and control. *Id.* at 1464–65. However, the court did not suggest that 18 U.S.C. 3552(f)(2) and U.S.S.G. § 5C1.2(a)(2) refer only to actual possession; on the contrary, the court appeared to assume that if the defendant had personal dominion and control over the firearm then he would be ineligible for safety valve relief.