United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 13, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

─────────────────────────

No. 05-10678

─────────────────────────

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

VALENTIN MATIAS,

                                        Defendant-Appellant.

─────────────────────────────────────────────

Appeal from the United States District Court for
the Northern District of Texas
─────────────────────────────────────────────

Before JONES, Chief Judge, REAVLEY and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:

Valentin Matias appeals his sentence arguing that the district court erred in concluding that he was not entitled to "safety-valve" relief from a mandatory minimum sentence under United States Sentencing Guidelines (U.S.S.G.) § 5C1.2, which depends, in part, on not possessing a firearm in connection with the offense, and that he was not

entitled to a two-level reduction in his offense level under U.S.S.G. § 2D1.1(b)(9).[1]  The

district court refused to apply the safety valve relief and the two-level Guidelines

reduction because Matias had constructively possessed a firearm in connection with the

offense.  Matias argues that his constructive possession of the firearm should not

disqualify him from safety valve relief or the two-level Guidelines reduction.  We reject

his argument and affirm.

## I.

Matias pleaded guilty to conspiracy to possess with intent to distribute and

distribution of cocaine.  Matias' conviction stems from his participation in the Gomez

organization, a tightly-knit conspiracy that distributed cocaine and crack from December

2003 until July 2004.  Mardonio Gomez and Monica Vega were the leaders and

organizers of the conspiracy.  The organization kept various apartments as stash houses

where members kept drugs and money.  The organization employed several individuals,

including Matias, as frontline workers. The individuals worked in the stash houses in

different shifts for twenty-four hours a day, seven days a week, taking telephone orders

for drugs.

On August 25, 2004, federal authorities executed a search warrant at the

_____

[1]  At the time of sentencing, U.S.S.G. § 2D1.1(b)(9) was U.S.S.G. § 2D1.1(b)(7). The district court correctly noted at sentencing that the safety valve itself was irrelevant in Matias' case because his guideline range was well above the statutory minimum sentence.  However, if he met the safety valve criteria, he would have received the two-point reduction in his offense level pursuant to § 2D1.1(b)(9), altering his guideline range.

organization's primary stash house in Dallas, Texas. They seized a Norinco MAK-90 assault rifle, two magazines, and six rounds of ammunition for the rifle, all of which were in plain view in an open bedroom closet. Gomez told the agents that the rifle was kept at the stash house for the protection of his workers, including Matias, and to protect the drugs. Matias knew that the assault rifle was in the apartment.

At sentencing, the district court found that Matias' offense level was 35, with a criminal history of I, which resulted in a Guidelines range of 168 to 210 months. The district court found that Matias had been jointly responsible for the stash house where members of the conspiracy had kept cocaine and crack, cash, and the rifle. The district court concluded that Matias had constructive possession of the firearm, and accordingly increased his Guidelines offense level by two pursuant to § 2D1.1(b)(1), which provides for such an increase where "a dangerous weapon (including a firearm) was possessed" in connection with certain drug offenses.

Matias requested the district court to rule that he qualified for the safety valve relief in § 5C1.2, and for the two-level reduction provided by § 2D1.1(b)(9). Section 5C1.2 provides that for a defendant convicted of certain controlled substance offenses, "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" when, among other requirements, "the defendant did not . . . possess a firearm or other dangerous weapon (or induce another

participant to do so) in connection with the offense."[2]  A defendant who meets the safety

valve criteria receives a two-level reduction in his Guidelines offense level under §

---

[2]  U.S.S.G. § 5C1.2(a)(2).  Section 5C1.2(a) provides in full:

(a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a)(1)-(5).

2D1.1(b)(9),[3] even if he does not face a mandatory minimum sentence.[4]  The district

court held that the safety valve and two-level Guidelines reduction did not apply because

> the firearm was available to all of these workers at the stash house including
> Mr. Matias, although I am not aware of any of them actually handl[ing] it or
> had it on their person.  Nonetheless, it seems to me there was constructive
> possession of it since it was at the stash house when they were there, and they
> knew it was there.  At least Mr. Matias knew it was there.

The district court then imposed a sentence of 168 months incarceration and five years of

supervised release.  Matias appeals from his sentence.

## II.

We review the district court's interpretation and application of the guidelines de

novo.[5]

Importantly, Matias does not challenge the district court's factual finding that he

constructively possessed the firearm.  His sole argument is that the district court erred in

finding him ineligible for safety valve relief and for the two-level reduction provided by §

2D1.1(b)(9).  Matias argues that the district court's holding runs contrary to *United States*

*v. Wilson*, 105 F.3d 219 (5th Cir. 1997).

In *Wilson*, this court addressed the issue of a co-conspirator's possession of a

---

[3]  U.S.S.G. § 2D1.1(b)(9) provides in full: "If the defendant meets the criteria set
forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of
Statutory Minimum Sentences in Certain Cases), decrease by 2 levels."

[4]  *See United States v. Leonard*, 157 F.3d 343, 345-46 (5th Cir. 1998).

[5]  *United States v. Sudeen*, 434 F.3d 384, 391 (5th Cir. 2005).

firearm. There, the defendant was denied the application of the safety valve provision because of his co-conspirator's possession of a firearm during a drug trafficking offense.[6] This court held that a defendant should not be denied the benefit of the safety valve because a conspirator possessed a firearm.[7] This Court stated:

> In interpreting a guideline, the commentary to the guideline is controlling when it functions to interpret or explain how the guideline is to be applied. The commentary to § 5C1.2(2) provides that "[c]onsistent with [U.S.S.G.] § 1B1.3 (Relevant Conduct)," the use of the term "defendant" in § 5C1.2(2) "limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."
>
>        \*    \*    \*
>
> Being bound by this commentary, we conclude that in determining a defendant's eligibility for the safety valve, § 5C1.2(2) allows for consideration of only the defendant's conduct, not the conduct of his co-conspirators. As it was Wilson's co-conspirator, and not Wilson himself, who possessed the gun in the conspiracy, the district court erred in concluding that Wilson was ineligible to receive the benefit of § 5C1.2.[8]

In support of his argument that the district court misinterpreted the guidelines by concluding that the safety valve did not apply because he had constructive, as opposed to actual possession of the firearm,[9] Matias relies on the following language from *Wilson*:

---

[6] *Id.* at 221-22.

[7] *Id.*

[8] *Id.* at 222 (internal citations omitted). *Accord United States v. Figueroa-Encarnacion*, 343 F.3d 23, 34-35 (1st Cir. 2003); *United States v. Pena-Sarabia*, 297 F.3d 983, 988-89 (10th Cir. 2002); *United States v. Clavijo*, 165 F.3d 1341, 1343 (11th Cir. 1999); *United States v. Wilson*, 114 F.3d 429, 432 (4th Cir. 1997); *In re Sealed Case*, 105 F.3d 1460, 1462-63 (D.C. Cir. 1997).

[9] This court had defined "actual possession" as "direct physical control over a thing at a given time." *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998). In

6

"to be precluded from the benefit of § 5C1.2, [the defendant] must have actually possessed a firearm during the conspiracy."[10]  At first blush, it would seem that Matias has a legitimate argument.  However, it is evident from the context in which this statement was made, the court was not using the term "actually possessed" in the sense of "actual possession" versus "constructive possession."  Accordingly, Matias' reliance on *Wilson* is misplaced.[11]

*Wilson* addressed only whether co-conspirator liability applies in the context of § 5C1.2(a)(2), not whether a defendant may constructively possess a firearm for purposes of that provision.  There is a significant difference between co-conspirator liability and constructive possession.  Under co-conspirator liability, one co-conspirator is liable for all reasonably foreseeable acts committed by his other co-conspirators in furtherance of

---

contrast, "[c]onstructive possession means ownership, dominion or control over a thing, or control over the premises where the thing is found."  *Id.*

[10] 105 F.3d at 222.

[11] This court has on two occasions, in unpublished decisions, distinguished *Wilson.  See United States v. Sanchez-Vasquez*, 70 Fed. Appx. 187, 188 (5th Cir. 2003) ("Sanchez's reliance on *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997), is misplaced because, unlike *Wilson*, there was simply no evidence that another individual carried the firearm at issue."); *United States v. Rodriguez*, 61 Fed. Appx. 120 (5th Cir. 2003) ("Relying on *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997), Rodriguez contends that the safety valve provision was applicable because he did not actually possess the weapon and he may not be held responsible for the conduct of his co-defendants, who were also seated in the van.  Rodriguez's reliance on *Wilson* is misplaced because the record shows at least that he had joint and constructive possession of the firearm. . . .").

7

the conspiracy.[12]  If co-conspirator liability applied in the context of § 5C1.2(a)(2), which

*Wilson* held that it does not, it would permit a defendant to be held accountable for a co-

conspirator's possession of a firearm even if the defendant had no access to the firearm

and did not even know his co-conspirator possessed a firearm, as long as the co-

conspirator's possession was reasonably foreseeable and in furtherance of the conspiracy.

In contrast, for a defendant to have constructive possession of a firearm, the defendant

himself must have "ownership, dominion or control over the [firearm] . . . or dominion or

control over the premises in which the [firearm] is concealed."[13]  Recognizing the

distinction between these two concepts, several courts have concluded that, while a

defendant may still qualify for the safety valve if his co-conspirator possessed a firearm,

his own constructive possession prevents him from benefitting from that provision.[14]

---

[12]  *United States v. Thomas*, 348 F.3d 78, 84-85 (5th Cir. 2003) (citing *Pinkerton v. United States*, 328 U.S. 640, 645 (1946)).

[13]  *United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996).

[14]  *See, e.g., United States v. Herrera*, 446 F.3d 283, 286-87 (2d Cir. 2006)*; United States v. McLean*, 409 F.3d 492, 499 n.6, 501 (1st Cir. 2005); *United States v. Bursey,* Nos. 99-1006 & 99-1011, 2000 WL 712377, at *4 (6th Cir. May 23, 2000); *In re Sealed Case*, 105 F.3d at 1463.  We have found only one decision that suggests that constructive possession of a firearm does not render a defendant ineligible for safety valve relief.  *See United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1186-87 (10th Cir. 2004).  We disagree with that decision and follow the majority of courts that have held that constructive possession of a firearm renders a defendant ineligible for safety valve relief. It is not entirely clear that *Zavalza-Rodriguez* held that constructive possession can never constitute possession for purposes of the safety valve.  *See Herrera*, 446 F.3d at 288 n.5 (noting that "[t]here is no suggestion that in *Zavalza-Rodriguez* that constructive possession can never constitute possession for purposes of the safety valve").

We have held in numerous contexts that the concept of possession of a weapon encompasses both actual possession and constructive possession.[15] We see no reason to exclude constructive possession from the safety valve provision. The purpose of the safety valve is to prevent mandatory minimum sentences from causing the "least culpable offenders [to] receive the same sentences as their relatively more culpable counterparts."[16] The culpability is virtually the same for a defendant who possesses a firearm on his person and a defendant who has a firearm within his personal dominion and control while committing that same offense.[17]

Here, there was substantial and uncontested evidence supporting the district court's conclusion that Matias constructively possessed the firearm. We hold that the district court correctly found Matias ineligible for the two-level reduction under § 2D1.1(b)(9).

---

[15] *See, e.g., United States v. Palacios-Quinonez*, 431 F.3d 471, 476 (5th Cir. 2005) (interpreting the term "possession" as used in the commentary to U.S.S.G. § 2L1.2 as including constructive possession); *United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004) (interpreting the term "possessed" as used in the commentary to U.S.S.G. § 2K2.1 as including constructive possession); *United States v. Patterson*, 431 F.3d 832, 837 (5th Cir. 2005) (possession of a firearm in 18 U.S.C. § 922(g) includes either actual or constructive possession); *United States v. Hinojosa*, 349 F.3d 200, 203 (5th Cir. 2003) (possession of ammunition in 18 U.S.C. § 922(g) includes either actual or constructive possession).

[16] H.R. REP. 103-460, at 4 (1994), *reprinted at* 1994 WL 107571.

[17] *See McLean*, 409 F.3d at 501 ("[A] defendant who, for example, has a concealed weapon strategically placed in a room where he conducts his drug business is no less dangerous than a defendant who conducts his business with a weapon on his person.").

**AFFIRMED.**