# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41074

United States Court of Appeals
Fifth Circuit

**FILED**

August 31, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RAMIRO RUIZ, also known as Edgar Ramiro Ruiz-Meraz,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CR-126-1

Before STEWART, Chief Judge, CLEMENT and HAYNES, Circuit Judges.

PER CURIAM:*

In May 2013, a confidential source, who was supervised by law enforcement agents, purchased 114 liters (411,000 grams) of liquid methamphetamine at a residence in Rio Grande City, Texas. The drugs were taken to Dallas, where an undercover Drug Enforcement Administration (DEA) agent transported them to a retail store in Lewisville, Texas. Ramiro Ruiz and his uncle, Eric Torres Castillo, arrived at the store. Ruiz entered the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41074

agent's vehicle and paid him $11,000 in exchange for the liquid methamphetamine. Ruiz and Castillo then left in two separate cars; Ruiz drove the car with the methamphetamine. The DEA agents followed Ruiz to a home in Garland, Texas. The agents knocked on the front door, entered the house, and found significant quantities of methamphetamine. Ruiz and another man, Javier Ayala Sanchez, attempted to flee the house, but agents caught and arrested them.

Ruiz informed the DEA agents that Castillo planned to pay him $1000 for transporting the methamphetamine. Ruiz admitted to knowing that he was transporting drugs, but he believed that the substance was cocaine. While searching the house, the DEA agents found at least 9,561 grams of actual d-methamphetamine and 443.6 grams of actual methamphetamine. The agents also found 2.207 grams of a mixture or substance containing a detectable amount of methamphetamine. The liquid purchased by Ruiz was sent to the DEA laboratory, which verified that it was a mixture or substance containing a detectable amount of methamphetamine. Agents also discovered notebooks with drug ledgers; a 9 millimeter caliber semiautomatic pistol and two magazines; a digital scale; and $1220 and documents bearing Ruiz's name in a bedroom. Additional investigation revealed that the house was used as a drug conversion laboratory. Ruiz had lived at the house with his uncle since February 2013. Sanchez had lived there for about one month, and told agents that approximately 12 to 14 pounds of methamphetamine and a handgun were located inside the house.

Ruiz was indicted for a conspiracy to possess with the intent to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. He pleaded guilty. His plea agreement stipulated to 135 months of imprisonment. He admitted that he agreed with one or more persons to "knowingly and intentionally possess with the intent to distribute and dispense

15 kilograms of a mixture or substance containing a detectable amount of methamphetamine or 1.5 kilogram of methamphetamine (actual)." He also admitted to assisting co-conspirators with various quantities of methamphetamine, which would then be distributed to other co-conspirators and co-defendants in the Eastern and Northern Districts of Texas.

At Ruiz's initial sentencing, the district court rejected his plea agreement. The district court expressed concern that the stipulated-to sentence was half of the minimum guidelines range for his offense as reflected in his Presentence Report ("PSR"). Ruiz's PSR was revised, and the parties again appeared before the district court. The parties orally stipulated to a sentence of 288 months, and the prosecutor stated that, "in essence," he was seeking a minor role adjustment for Ruiz. The district court noted that there was no provision in the PSR crediting the adjustment, and thus set his sentence hearing for a later date to give the probation department time to revise the PSR. Ruiz withdrew his guilty plea, and soon thereafter again pleaded guilty to the indictment but with the ability to appeal. Another PSR was prepared. Because Ruiz had stipulated to being responsible for at least 15 kilograms of a mixture or substance containing a detectable amount of methamphetamine or 1.5 kilograms of actual methamphetamine, his base offense level was 38. The PSR applied the following enhancements: (1) a two-level enhancement under § 2D1.1(b)(1) because the offense involved a firearm; (2) a two-level enhancement under § 2D1.1(b)(12) because he manufactured, distributed, or stored methamphetamine at the house; and (3) a two-level enhancement under § 2D1.1(b)(13)(A) because hazardous waste was removed from the premises. After a reduction of three levels for acceptance of responsibility, Ruiz's total offense level was 41. U.S.S.G. § 3E1.1(a),(b). The probation officer determined that Ruiz did not qualify for a role adjustment under U.S.S.G. §§ 3B1.1 or 3B1.2. With a criminal history score of 0 and a

criminal history category of I, the advisory guidelines range of imprisonment was 324-405 months.

At sentencing, the district court sua sponte found that the hazardous waste enhancement did not apply. It adopted the remaining factual findings of the PSR and determined that Ruiz's adjusted total offense level was 39, resulting in a new guideline range of 262-327 months of imprisonment.

Ruiz's counsel told the court that Ruiz wished to object to the firearm enhancement, but noted that he explained to Ruiz that the law did not support the objection. The district court agreed. Ruiz then asked the court "if those points can be removed about the house." Ruiz's counsel clarified that Ruiz was referring to the premises enhancement and that he had informed Ruiz that the issue was foreclosed by circuit precedent. The district court confirmed that there was no basis to negate the enhancement. It sentenced Ruiz to 262 months of imprisonment and a five-year term of supervised release. Ruiz appealed.

## I.

We review preserved challenges to sentences, whether inside or outside the guidelines range, for an abuse of discretion. *Gall v. United State*, 552 U.S. 38, 51 (2007). We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* In making this determination, we review the district court's interpretation and application of Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). If there is no procedural error, we "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. If a challenge is not preserved for appeal, we

review for plain error. *United States v. Juarez*, 626 F.3d 246, 253-54 (5th Cir. 2010).

## II.

Ruiz argues that his sentence is both procedurally and substantively unreasonable, raising five separate errors by the district court. He further contends that his sentence violates the Eighth Amendment. We address each argument in turn.

### A.    Procedural and Substantive Unreasonableness

#### 1.    Drug Quantity

Ruiz argues that his base offense level of 38 was unreasonable because the district court erred by attributing to him the entire amount of the drugs involved in the conspiracy, rather than making an individualized finding. He contends that *United States v. Haines*, 803 F.3d 713 (5th Cir. 2015), requires the district court to make a specific finding as to the drug quantity attributable to him. His arguments fail.

We apply plain error because Ruiz did not preserve this issue. Here, the district court did not plainly err in attributing the entirety of the drugs involved in the conspiracy to Ruiz. *Haines* is inapposite. In that case, we simply held that "for purposes of statutory minimums at sentencing, the relevant quantity is the quantity attributable to the individual defendant." 803 F.3d at 742. But Ruiz does not challenge the calculation of his mandatory minimum sentence. *See United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir.), *cert. denied*, 136 S. Ct. 2477 (2016). He does not present any evidence to rebut the quantity of drugs listed in the PSR and relied upon by the district court. Thus, the district court did not plainly err in failing to make a specific finding regarding the amount of drugs attributable to Ruiz.

No. 15-41074

## 2.    Dangerous Weapon Enhancement

Ruiz argues that the district court erred by applying a two-level firearm enhancement under § 2D1.1(b)(1) because there was no evidence that he possessed the gun seized from his uncle's house. He argues that gun was found in the master bedroom, and thus he had no possession or control over it. Ruiz's arguments again fall short.

Section 2D1.1(b)(1) provides for a two-level offense increase "[i]f a dangerous weapon (including a firearm) was possessed" during certain drug offenses. The government must prove that Ruiz possessed the weapon by a preponderance of the evidence. Either personal possession or possession by another that was reasonably foreseeable to Ruiz is sufficient. *Cisneros-Gutierrez*, 517 F.3d at 764-65. If the government satisfies this burden, Ruiz "can only avoid the enhancement by showing that 'it was clearly improbable that the weapon was connected with the offense.'" *United States v. King*, 773 F.3d 48, 53 (5th Cir. 2014) (quoting *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010)). Here, the DEA agents arrested Ruiz fleeing a drug conversion house after purchasing a large amount of methamphetamine. A search of the house revealed a pistol, drug ledgers, a digital scale, various quantities of methamphetamine, cash, and documents bearing Ruiz's name. Ruiz had lived in the house since February 2013. A preponderance of the evidence established a temporal and spatial relationship between the firearm and the drug conspiracy between Ruiz, Castillo, and Sanchez. The evidence also demonstrates that possession of the firearm by either Sanchez or Castillo was foreseeable by Ruiz. *See Cisneros-Gutierrez*, 517 F.3d at 764-66; *United States*

*v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010). Thus, the district court did not err when it applied the two-level enhancement.[1]

### 3.    Premises Enhancement

Ruiz argues that the district court erred by applying the two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance because he neither owned nor maintained the property. He argues that he only recently moved to the house prior to his arrest and that he did not control access to the house or activities within it. Ruiz's arguments are without merit.

Section 2D1.1(b)(12) provides for a two level increase "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." In determining whether Ruiz maintained the premises we should consider "(A) whether [Ruiz] held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which [Ruiz] controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1(b)(12) comment (n.17). Although Ruiz argues that he did not own or maintain the premises, he admitted that he lived there since February 2013. There is also no evidence that Ruiz's access to the house was in anyway limited. He transported a large amount of methamphetamine to the house shortly before his arrest, and an investigation revealed that the house was used as a drug conversion laboratory. Ruiz did not offer any evidence to rebut the PSR's findings, and the district court was free to rely upon it. *See United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (noting that the PSR generally bears sufficient indicia of reliability to be considered as evidence by the district court in making factual

---

[1] We apply de novo review because Ruiz's arguments "do[] not concern the specifics of the fact finding, but, rather, whether the facts found are legally sufficient to support the enhancement." *Zapata-Lara*, 615 F.3d at 390. To the extent Ruiz challenges the fact finding of the district court in applying the enhancement, we find no clear error. *See King*, 773 F.3d at 52.

determinations); *see also United States v. Rodney*, 532 F. App'x 465, 473 (5th Cir. 2013) (holding that district court did not clearly err in finding that defendant maintained a shed to distribute drugs where the evidence showed that defendant had unimpeded access to it). Thus, the district court properly applied the two-level enhancement under § 2D1.1(b)(12) to Ruiz.

### 4.    Minor Role Adjustment

Ruiz argues that the district court erred by failing to apply a minor role adjustment under U.S.S.G. § 3B1.2 because he had a minimal role in the offense. For support, Ruiz points to comments made by Assistant United States Attorney Ernest Gonzalez at the plea announcement hearing. Gonzalez believed that Ruiz qualified for a minor role adjustment because "he had limited time of involvement [in the conspiracy] in comparison to the co-defendant." This court, like the district court, is not bound by the recommendations of the parties to apply a sentencing adjustment. *See United States v. Rodriguez*, 62 F.3d 723, 725 (5th Cir. 1995).

Guidelines § 3B1.2(b) provides for a decrease of two levels "[i]f the defendant was a minor participant in any criminal activity." "A minor participant is one 'who is less culpable than most other participants, but whose role could not be described as minimal.'" *United States v. Silva-De Hoyos*, 702 F.3d 843, 846 (5th Cir. 2012) (quoting § 3B1.2 cmt. n.5). "It is not enough that a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity." *Id.* at 846-47 (citation omitted).

We apply plain error review because Ruiz did not object to the district court's decision not to apply the adjustment. Ruiz's conceded that he "assist[ed] co-conspirators with multi-gram quantities of methamphetamine from various sources which would then be distributed to other co-conspirators and co-defendants during the term of conspiracy in the Eastern and Northern

Districts of Texas." He also stipulated to the amounts of methamphetamine listed in the indictment. The DEA Agents observed Ruiz purchase and transport a large quantity of liquid methamphetamine to his home. Ruiz's role in the conspiracy was not peripheral and, thus, the district court did not plainly err by not applying the minor role adjustment under § 3B1.2.

### 5.    Safety Valve Reduction

Ruiz argues that the district court plainly erred by failing to sua sponte apply the two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(17) because he satisfied the safety valve requirements under U.S.S.G. § 5C1.2, including the requirement that he did not actually or constructively possess a weapon during the offense. The government agrees that the record does not show that Ruiz had actual or constructive possession of the gun, but it argues that Ruiz has not shown that any error affected his substantial rights.

As an initial matter, we are not bound by the government's concessions. *See, e.g., United States v. Vargas-Garcia*, 434 F.3d 345, 348 (5th Cir. 2005). To qualify for the safety valve provision under U.S.S.G. § 5C1.2, Ruiz must meet five criteria.[2] Particularly relevant here is the requirement that he not possess

---

[2] The criteria are as follows:

> (1)    the defendant does not have more than 1 criminal history point . . .;
> (2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3)    the offense did not result in death or serious bodily injury to any person;
> (4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . ; and
> (5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

U.S.S.G. § 5C1.2(1)-(5).

No. 15-41074

a firearm in connection with the offense. U.S.S.G. § 5C1.2(2). This provision encompasses both actual and constructive possession. *United States v. Matias*, 465 F.3d 169, 174 (5th Cir. 2006). A defendant has constructive possession of a firearm, when he individually has "ownership, dominion or control over the [firearm] . . . or dominion or control over the premises in which the [firearm] is concealed." *Id.* at 173 (quoting *United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996)).

> However, where two or more persons jointly occupy the place where a firearm is found, mere control or dominion of that place is, by itself, insufficient to establish constructive possession. Evidence showing at least a plausible inference that the defendant had knowledge of and access to the weapon is necessary to establish constructive possession.

*Fields*, 72 F.3d at 1212. Ruiz contends that there is no evidence proving that he had actual or constructive possession of the gun. But Ruiz has the burden of establishing his eligibility for the safety valve reduction. *See United States v. Gonzalez-Candelario*, 312 F. App'x 613, 614 (5th Cir. 2009). Although the government may not have proven that Ruiz actually possessed the gun, the record indicates that Ruiz may have constructively possessed it. Ruiz was involved in a drug conspiracy and was arrested after buying and transporting a large amount of liquid methamphetamine. The gun was found inside the meth-house where Ruiz had lived for a few months. Co-conspirator Sanchez told agents that a handgun was located inside the house, and though he had lived at the house for a shorter period of time than Ruiz, he knew about the gun. Although Sanchez's knowledge of the gun does not affirmatively establish Ruiz's knowledge and access to the weapon, it does, when taken in light of the other facts in the record, create a plausible inference that Ruiz had knowledge and access. In other words, Ruiz has not met his burden of establishing that

the safety valve reduction applies. The district court did not commit clear or obvious error in declining to apply this reduction.[3] *See Puckett*, 556 U.S. at 135 (explaining plain error review).

As discussed, all of Ruiz's procedural claims of error are without merit. Additionally, Ruiz's contention that his sentence is substantively unreasonable also fails. "A sentence within the Guidelines range is presumed reasonable on appeal." *United States v. Tuma*, 738 F.3d 681, 695 (5th Cir. 2013) (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009)). Ruiz was sentenced within the proper Guidelines range, and the district court adequately considered the factors set forth in 18 U.S.C. § 3553(a). Ruiz has failed to rebut the presumption of reasonableness for his sentence. *See id.* ("The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." (quoting *United States v. Diaz Sanchez*, 714 F.3d 289, 295 (5th Cir. 2013))). Thus, the district court did not abuse its discretion by sentencing Ruiz within the Guidelines.

## B.    Eighth Amendment

Lastly, Ruiz argues that his sentence violates the Eighth Amendment. He contends that his 262 month long sentence constitutes cruel and unusual punishment because the length of his sentence is grossly disproportionate to his crime.

---

[3] Even more, we have our doubts that Ruiz would be able to establish that he met the fifth requirement of U.S.S.G. § 5C1.2, particularly in light of plain error review. There is some evidence that Ruiz quickly cooperated with the government. But, over the course of several hearings, he repeatedly changed his mind on his degree of involvement with the conspiracy. His see-sawing seems inconsistent with the full and truthful debriefing required by § 5C1.2(5). *See, e.g.*, *United States v. Molina-Borrayo*, 569 F. App'x 232, 234-36 (5th Cir. 2014).

"We have recognized that the Eighth Amendment 'preclude[s] a sentence that is greatly disproportionate to the offense, because such sentences are 'cruel and unusual.''" *United States v. Hebert*, 813 F.3d 551, 565 (5th Cir. 2015) (quoting *McGruder v. Puckett,* 954 F.2d 313, 315 (5th Cir.1992)). "On review, . . . this court does not substitute its judgment for that of the legislature nor of the sentencing court as to the appropriateness of a particular sentence; it should decide only if the sentence is within the constitutional limitations." *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir. 2010) (internal quotation marks and citations omitted).  Our review is narrow and successful Eighth Amendment challenges to the length of prison terms will be rare. *Id.*

Ruiz's Eighth Amendment challenge is not the rare case. He was sentenced within the Guidelines, and he has failed to show that his sentence is greatly disproportionate to his offense. He has thus failed to show that his sentence constitutes cruel and unusual punishment.

## III.

For the foregoing reasons, we AFFIRM.